CONTENT (RISTON v.). See Case No. 11,-862.

━━━

## Case No. 3,141.

### The CONTINENTAL.

[8 Blatchf. 3.] [1]

Circuit Court, D. Connecticut. Sept. 20, 1870. [2]

COLLISION BETWEEN STEAMERS—LIGHTS—PRECAUTIONS—BURDEN OF PROOF.

1. A steamer navigating Long Island Sound *held* in fault, in a collision with another steamer, for exhibiting no stern light, but showing only her colored lights and a white light forward on her stem, whereby the other steamer was misled into the belief that she was a sailing vessel.

2. The other steamer *held* to have been justified in such belief.

3. A vessel which is in fault in not complying with the statute regulation as to lights, takes the hazard of such mistakes as may, in the exercise of ordinary diligence and care, be made by other vessels as to her true character.

4. Although the fault of one vessel will not justify the want of ordinary care and skill in the other, when a vessel clearly in fault invokes the application of that principle, the burthen is upon her of showing very clearly that the party misled by that fault might, nevertheless, by ordinary care and skill, have discovered the mistake and avoided the collision. The faulty party cannot demand of the other extraordinary diligence or skill, but only ordinary care, under the actual circumstances of mistake caused by his own fault.

[Cited in The Barque Kallisto, Case No. 7,-600.]

5. Two steamers were at a distance approaching each other, and the green light of one of them was seen decidedly off the starboard bow of the other, so as to make it certain that, if each steamer kept her course, there could be no collision, as their courses did not cross ahead of either. This each was bound to know; and, if their proximity was such as to suggest possible danger of collision, it was the duty of the former to keep her course and of the latter to keep out of the way: *Held*, therefore, on the proofs in this case, that, if the latter vessel might, by ordinary vigilance and skill, have corrected a mistake of supposing the former to be a sailing vessel and should have known that she was a steamer, still the former had no right to port her helm and attempt to pass by

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Reversed in New Haven Transp. Co. v. The Continental, 14 Wall. (81 U. S.) 345.]

the port side of the latter, and that a collision caused by her doing so was her sole fault.
[Cited in The Sunnyside, Case No. 13,620.]
[See note at end of case.]

[Appeal from the district court of the United States for the district of Connecticut.]

In admiralty. The libel in this case was filed by [the New Haven Steam Transportation Company], the owners of the steam propeller Northampton, against the steamboat Continental [the New Haven Steamboat Company, claimant], to recover for the damages sustained by the libellants, by a collision between the two vessels in the night, off the harbor of New Haven. The Northampton was about entering the harbor and was on a course, east northeast, heading directly for New Haven light. The Continental came out of the harbor, and the proofs were claimed by her to establish that she had passed from a half to three-quarters of a mile beyond and to the southward of that light, when she took her course southwest half south, bound for New York, although this was denied by the libellants. The wind was north-northeast. The libellants alleged, that the Continental had not reached the course of the Northampton when she came to her course for New York, that she was seen over the port bow of the Northampton, and that the latter ported her helm to pass to the right, but her endeavor was defeated by the starboarding of the helm of the Continental, which brought the two vessels together. The claimants insisted, first, that, by the want of range lights on the Northampton, they were misled into the belief that she was a sailing vessel, and that the collision was caused by the fault of the Northampton in this respect, and by the want of a proper lookout on the latter; and, also, that, when the Continental had passed beyond the light-house, and had the Northampton on her starboard bow, each being on a course which did not cross the course of the other, the Northampton suddenly put her helm to port and attempted to cross the bows of the Continental, and a collision ensued. The libel was dismissed by the district court, on the ground that the Northampton was in fault in not having her range lights, and that for that reason the Continental was misled into the belief that she was a sailing vessel. The libellants appealed to this court.

Charles Donohue, John S. Beach, and Charles R. Ingersoll, for libellants.
· Erastus C. Benedict, Edward H. Owen, and Tilton E. Doolittle, for claimants.

WOODRUFF, Circuit Judge. 1. I concur fully in the conclusion of the judge of the district court in respect to the fault of the libellants' vessel, the propeller Northampton, and her responsibility for the collision which gave rise to this action. The proof clearly shows that she was, before and at the time of the collision, without the proper stern light. At what precise time it became dim is not proved, and, notwithstanding it was the duty of those in charge thereof to see that it was up and burning brightly, it may, for aught that appears in their testimony, have been, for some time before it was taken down, in such condition that it wholly failed to answer the requirements of the act of congress [13 Stat. 60]. When they came within sight of the steamboat Continental, and were thereby aroused to diligence, they discovered the condition of the stern light, but too late to supply the defect in season to inform the Continental of the true character of their vessel. In consequence of this, followed as it was by the taking down of the light for the purpose of having it trimmed, those on board of the Continental saw only the colored light and the white light forward on the stem of the propeller, and were thereby, as a matter of fact, misled into the belief that the propeller was a sailing vessel. Waiving for the present the inquiry whether careful and critical observation of the relative bearings of the two, as they approached each other, would have enabled the officers of the Continental to discover their mistake sooner than they did, the fact is fully established, that this condition of the lights did mislead them. Their testimony is explicit on the point, and it is not incredible. On the contrary, such an exhibition of lights was well calculated to mislead them. Although a sailing vessel is not permitted by law to carry a white light, yet it is proved, without contradiction, to be not unusual for a vessel, when she is near her destination in the night, and is making preparations for landing, to have use for a light on her forward deck, in getting her lines or anchors ready, &c. The propeller on this occasion was just entering the harbor of New Haven.

To the suggestion, that ocean-bound steamers are required to carry two colored lights and one white light, that, therefore, the presumption was that the propeller was a steamer, that the officers of the Continental should have so assumed, and that, on this ground, the taking the propeller for a sailing vessel was, of itself, a proof of negligence or want of skill, the answer is, (1.) There is no proof that, in fact, ocean-bound steamers were ever seen navigating Long Island Sound at all, still less in that neighborhood; (2.) If it be, nevertheless, true, and so notorious that the court can take notice thereof, the white light which ocean-bound steamers carry is at the foremast-head, far above and not below the colored lights, and not near the deck, on the stem. The argument for the libellants assumes that the officers of the Continental might reasonably have expected to see ocean-bound steamers in the Sound; but the act requiring range lights applies to all coastwise steamers, although they may navigate the ocean on their coastwise voyages. I am not able to say

that steamers crossing the ocean are in the habit of passing the neighborhood of the place of this collision. In any view of that question, their light at the foremast-head could not readily be mistaken for the bow light of a coasting vessel.

The propeller was, therefore, in fault. She was violating the act of congress. That neglect of compliance with the law in fact misled the officers of the Continental. The lookout on the latter took her for a sailing vessel, and so reported her. The captain and the man at the wheel both swear that they took her for a sailing vessel, and acted upon that belief. A Hell Gate pilot, a passenger on board, having no responsibility touching the management of the Continental, and apparently an indifferent witness, confirms them. He, also, took the propeller to be a sailing vessel.

It is suggested, that, in a case in the southern district of New York—The Scotia [Case No. 12,513]—the officers of the steamship Scotia were held justified in mistaking a sailing vessel, the Berkshire, for a steamer, because she had a white light, and that, if a white light on a sailing vessel can be deemed to indicate that the vessel bearing it is a steamer, a white light on a steamer cannot also be held to indicate that the steamer is a sailing vessel. In the first place, the only light seen on the Berkshire was a white light, and it was not deemed a fault that the officers of the Scotia believed that such white light was the mast-head light of a steamer at a distance, just rising above the horizon, whose colored lights had not yet become visible above the surface of the distant waters. The cases are very unlike in this respect. In the next place, the vessel which is in fault in not complying with the statute regulations, takes the hazard of such mistakes as may, in the exercise of due diligence, care and skill, be made by those who observe her. Approaching vessels have a right to expect compliance with the law, and exercise their judgment accordingly; and, even if the same circumstances should operate to lead, in one instance, to the erroneous belief that the faulty vessel is a steamer, and, in another instance, to an erroneous belief that the faulty vessel is a sailing vessel, it by no means follows that either of the deceived parties is in fault. If they actually exercise proper vigilance and skill, and yet are in fact misled, they are not responsible that, under circumstances apt to create doubt, their judgment was in fact deceived. It is against precisely such errors that the law was designed to guard, and precisely such errors the neglect of its observance is likely to produce. Therefore, while I think that the Continental is, upon other grounds, exonerated from fault, I concur in the conclusion below, that the propeller was in gross fault, that such fault in fact misled the other vessel, and that, so far as that mistake was the cause of the

collision, the responsibility rests on the propeller.

2. There is a further view of the subject, urgently pressed upon my attention by the counsel for the libellants, and founded, in part, upon the testimony of the witnesses from the Continental. It is to the effect following, namely, that the position and course of the propeller, seen to be approaching the Continental, considered in connection with the course of the latter and the observations in fact made from the latter, are so inconsistent with the idea that the propeller was a sailing vessel, that such idea could not be true, and the officers of the Continental could not, without negligence or want of skill, believe it to be true; that if, at the first observation, they were deceived, the changes presented to their eyes almost immediately should have undeceived them; and that even the fault of the propeller did not excuse them from the exercise of ordinary care and skill. The legal principle involved in this argument is correct; but, when a vessel clearly in fault invokes its application, the burthen is upon her of showing very clearly that the party misled thereby might, nevertheless, by ordinary care and skill, have avoided the collision or corrected the misapprehension. The faulty party cannot, for his own protection, demand of the other extraordinary diligence and skill. All he can require is ordinary care, under the actual circumstances of mistake caused by his own fault.

The claim of the libellants on this point is, that, when the officers of the Continental took the propeller to be a sailing vessel, they were bound to know, and must be assumed to know, all the conditions involved in that supposition. Thus, the wind was, as is expressly admitted, north-northeast. This they knew, or were negligent in not knowing it. If the vessel seen was a sailing vessel, they knew that, if she was on her port tack, she could not be sailing nearer to the wind than due east, that is, within six points; and, if on her starboard tack, not nearer to the wind than northwest. But they testify that her green light was visible. If that be true, then they certainly knew that she was not on her port tack, for, on that tack, they could not see her green light from the position in which they then were, since only the red light, on her port side, could be visible. They, therefore, knew, assuming that their testimony is true, that, if a sailing vessel, she was not sailing in a direction approaching them, but was going from them. Not only so, but, assigning to the Continental, according to the testimony of her officers, a position four-fifths of a mile southwestwardly of New Haven light, the green light of a sailing vessel seen, as they say, two points on her starboard bow would, even if such vessel were sailing close-hauled on the wind, that is, on a northwest course, be barely visible; and, if she was three points on the starboard

bow, as they say she was a very few minutes later, her green light could not be seen at all. Her back-board would have entirely cut it off. So that, if, in this position, they saw the green light at all, and were running twelve miles an hour, it must have almost immediately disappeared, opening, until disappearance, on the Continental's starboard bow. All this, as nautical men of ordinary skill, they knew, and, upon the premises assumed, all this is obvious to any experienced mariner. This being so, it was demonstrated to them by what, according to their own testimony they saw, that she was not a sailing vessel, because she continued to bear in nearly the same direction, her green light being continuously visible, which could not be if she was a sailing vessel; and this they were bound to know. When they first saw her, the captain of the Continental says she might have been three or four miles off—he should judge four miles—and bore three points on his starboard bow. Elsewhere, he says two and a half points, and makes the time when she was reported five minutes before the collision, which would make her then distance about one mile and a half. Other witnesses place the propeller from two to two and a half points on the starboard bow, and distant from one and a half to two miles. Taking either of these estimates, and considering the speed of the Continental, one minute could not elapse before the green light must be hidden from view, if she was a sailing vessel, and there was an abundance of time, if they had shown ordinary care and attention to the steady nearing of the green light, to see that the vessel was a steamer and not a sailing vessel. And, further, if a sailing vessel, showing her green light two and a half or three points on the Continental's starboard bow, the latter moving twelve miles an hour on her then course, southwest half south, her bearing would have changed with great rapidity more and more to starboard, and the fact that she did not at any time bear more than three points on that bow, was conclusive that they were mistaken. They should have known this, and they might and ought to have seen it while there was time enough to act accordingly.

This reasoning has much force if the positions of the vessels and the opinions of the officers of the Continental are assumed to be mathematically accurate. But, in relation to estimates of distance, and observations of the precise angle made by another vessel measured on a ship's bow, as well as of slight fluctuations in course, made in the night, it is of common experience, that witnesses with the same opportunity for judgment differ, and some must, of course, be inaccurate. Close geometrical calculations are not reliable, unless the premises are in harmony with other facts which are deemed established. And, in regard to the claim that the Continental had opportunity to dis-

cover her mistake in supposing the propeller to be a sailing vessel, while it is true, upon the premises, that such discovery might possibly be made, if those premises are varied, no such result ensues; and, in any event, it calls upon the officers, after being deceived and misled without fault, to enter upon a careful scrutiny when wholly unaware of its necessity, and make their correction, and act upon it, within a very short time. Nevertheless, the considerations thus urged have led me to scrutinize the evidence of facts not lying in mere estimates, by which to test the management of both vessels; and, in my judgment, there are facts, established by a clear preponderance of evidence, which convict the propeller of fault, and acquit the officers of the Continental, even if it were conceded that the latter ought to have known that the former was a steamer. They are these: 1. When the officers of the Continental saw the propeller, they saw her off their own starboard bow. 2. They also saw her green light, and not her red light, until she ported and turned across their course. From these two facts, it is a necessary and inevitable result, that the officers of the Continental had no reason to apprehend a collision, and their sheer to the southward, out of abundant caution, or, as a witness expresses it, "to give the propeller a wide berth," was taking more than ordinary care to be wholly out of reach of danger. These two facts being established, there could be no collision if both vessels kept their course; and the result is, that the accident was wholly caused by the sudden and unwarranted porting of the propeller, which brought her across the bows of the Continental.

I am aware that there is some conflict in regard to the facts above stated. The captain and pilot of the propeller testify that they were heading east-northeast, for New Haven light; that the Continental, when she sheered to the westward, to take her course toward New York, was seen on the propeller's port bow; and, in substance, that she so continued down to the moment when the propeller ported to pass her further to the right, or port side to port side. It is not necessary to question their sincerity. They had seen the Continental coming down the harbor very decidedly on their port bow. But they had a duty to perform in the management of their vessel, and they had no lookout forward—in itself a neglect of duty and a fault. Had such lookout been forward, in the discharge of his duty, he would have observed the Continental closely, and could have spoken effectively on the subject; and, most probably, as I think, the collision would have been avoided. The situation of the Continental, as she took her course, is so important, and the captain and pilot of the propeller, who are under heavy responsibility in this matter, must have seen it to be so important, that they were under a strong motive to believe that what they saw

a few minutes before had continued, though they did not themselves certainly see it. Their testimony is wholly over-borne. 1. The lookout on the Continental. The wheelsman and the captain of the Continental are each positive that, before they came to their course, southwest half south, they had passed beyond New Haven light, from a half to three quarters of a mile. This would bring the propeller, running for that light, on the Continental's starboard bow. The instructions of the captain to the wheelsman to go beyond the light confirm this. 2. The captain, wheelsman, and lookout of the Continental each testify that the propeller was in fact seen on the starboard bow of the Continental, and so continued until the propeller ported and brought the vessels together. Assuming that they have the same interest and are under the same responsibility as the captain and pilot of the propeller, it becomes important, that they are expressly corroborated by two persons who have no such motive. Two passengers, one of them an experienced mariner and a Hell Gate pilot, both expressly sustain them, and their testimony in detail carries with it conviction of its truth. 3. The important fact, that, after the Continental took her course, south west half south, according to the captain, the green light of the propeller, and not the red, was visible, and so continued until the propeller changed her course across that of the Continental, is, in like manner, testified to and corroborated. If the propeller was heading, as her witnesses state, for the New Haven light, her green light, and not her red, must have been visible to the Continental, she then being below that light-house. On these points, then, there are five witnesses, two of them disinterested and intelligent observers, and one of the latter testifying to his observations on two distinct, specified occasions, at one of which his observation was made at the after starboard gangway of the Continental, where he could not see the propeller at all unless she was to the starboard of the Continental, and there he saw her green and not her red light.

I cannot hesitate to say, that the evidence preponderates largely, that, during all the time after the Continental took her course, the propeller was to her starboard, and on a course which presented her green light to view. In that relative situation, the vessels could not collide if each kept her course. The act of the officers of the Continental in falling off, as the witnesses from both vessels agree that she did, was a measure of greater caution, which removed all doubt. The vessels were not crossing each other's track, but were on lines of perfect safety, and there was no just ground to apprehend collision until the propeller ported. If they had been crossing, still, as the Continental had the propeller on her own starboard side, it was the duty of the propeller to keep her course, and leave the Continental to keep

out of the way. Act April 29, 1864, arts. 14, 18 (13 Stat. 60, 61). By suddenly porting, the propeller defeated the effect of the sheer of the Continental to the southward. Upon no view of the subject which I can harmonize with the weight of the evidence, can I impute any fault to the Continental, whether she was bound to regard the vessel she had under observation as a steamer, or was justified in the mistake into which she was led by the want of proper lights.

The decree should be affirmed.

[NOTE. Reversed by the supreme court, on the ground that the evidence was sufficient to fully satisfy the court that those in charge of the Continental did not exercise due care and vigilance to ascertain the character of the Northampton, and that, if they had done so, they would have been enabled to have adopted reasonable precautions to have prevented the collision. The court then found that both vessels were in fault, and directed the damages to be equally apportioned between the offending vessels.

[The appeal was taken by the libellant, and the opinion was delivered by Mr. Justice Clifford. The Continental, 14 Wall. (81 U. S.) 345.]